### In re WASHINGTON AVE. IN CITY OF NEW YORK.

#### Appeal of WOTHERSPOON PLASTER MILLS, Inc., et al.

(Supreme Court, Appellate Division, Second Department. January 7, 1916.)

MUNICIPAL CORPORATIONS ☞514—OPENING OF STREETS—ASSESSMENT OF BENEFITS—REPORTS OF COMMISSIONERS.

The original commissioners of estimate and assessment to assess the damages and benefits resulting from the opening of a street, being limited in assessment of benefits to 50 per cent. of the property not taken, by Greater New York Charter (Laws 1901, c. 466) § 980, made a report in which the award of damages exceeded the assessment of benefits, confirmation of the award was denied, and the report sent back for revision and correction. *Held*, that the second commission to which the matter was referred cannot arbitrarily, without reference to value, increase the assessment of benefits so as to balance them, but must receive evidence of value.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1207–1215; Dec. Dig. ☞514.]

Appeal from Special Term, Queens County.

In the matter of the application of the City of New York in the opening and extending of Washington Avenue. Appeals by the Wotherspoon Plaster Mills, Incorporated, and another, from an order of the Special Term overruling appellants' objections and confirming the supplemental and amended report of the Commissioners of Estimate and Assessment as to assessments for benefits, so far as it related to the lands of appellants. Reversed and remanded, with directions.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Charles E. Lydecker, of New York City, for appellant Wotherspoon Plaster Mills, Inc.

Benjamin Trapnell, of New York City, for appellant Stuard Hirschman.

John J. Kearney, of New York City (Joel J. Squier, of New York City, on the brief), for respondent City of New York.

John Brooks Leavitt, of New York City, amicus curiæ.

PUTNAM, J. This original commission at a meeting on February 20, 1906, fixed the area of assessment taking in half a block on each side of Washington avenue as opened. As the law then stood, the commission had power to make this determination. This street open-

ing was about 6,000 feet in length, connecting Jackson avenue in the borough of Queens with the East River frontage, opposite Blackwell's Island. Cutting through the long block of about 600 feet between Vernon avenue and the East River involved slicing off the front of the Wotherspoon Plaster Mills, and a like strip from the lands of Mr. Hirschman at the southerly side of the avenue. By the new grade of the avenue descending to the river front, the lands at the sides were left at quite a height above this new street excavation. Hence in this river-end block to the west of Vernon avenue were the larger awards for damage. The amount allowed the Wotherspoon Plaster Mills, Inc., was $115,589 without interest, and the damages to Hirschman for the lands taken on the opposite side of Washington avenue were $32,000. In distributing these damages, the commission sought to apply the "block by block" rule. But it was then confronted by the limitation in the City Charter, § 980, that such assessments cannot exceed half the value of the lot assessed. On January 4, 1910, the commission found that to levy the damage awards upon the lands in that river block west of Vernon avenue would impose a burden of more than half the lot values. Although the city thereupon recalled its expert, Mr. Ryan, and sought to put up the value of these lots so as to surmount this difficulty of valuation, the commission adhered to their previous view, stating that the offered testimony did not afford any ground to change their conclusion.

Accordingly, the original commission, Messrs. James J. Conway, John Mackie, and Samuel J. Campbell, reported an assessment for benefits against appellant Wotherspoon of $51,357, and as to appellant Hirschman of $16,672. This, however, left a deficiency, since the total benefits assessed back were $263,997.96, while the aggregate damage awards were $310,283.40. This first statement was signed on September 8, 1910. The damage awards had been accepted without question. The city opposed confirmation, because of this deficiency. On February 1, 1912, the court at Special Term sustained the city's position by an order sending back the report for revision and correction, and directed that the entire damage awards and costs be assessed on the property deemed to be benefited. By reason of death and by resignation, this report came back before new appointees. As appears by the record, including the original abstract of assessment, these appointees took the figures originally reported, and, with the aid of a computer, proceeded to reassess the benefits in the effort to bring about a balance. The increased figures were put over those originally entered, like a palimpsest. Except the item of one-third the value of condemned buildings, $25,184, which they assessed upon the city pursuant to the City Charter, § 980, the balance was reached by raising the benefit assessments. As to these two appellants, the increases were:

|  | Original Assessment | Second Assessment |
|---|---|---|
| Wotherspoon Plaster Mills, Inc. | $51,357 00 | $69,692 75 |
| Hirschman | $16,672 00 | $29,394 98 |

These new footings, superimposed on those of the 1910 report, were then signed by the two acting members of the second commission

on November 26, 1913. Not only did the commission make these increased assessments for benefits, but they arrived at the result without hearing testimony. When the appellants offered to introduce evidence of value, they were refused. Furthermore, no member of this commission had heard the testimony originally given as to the values of the appellants' property. Therefore a marked contrast appears between the two reports. The first commission had themselves heard testimony as to value, and had original jurisdiction of the distribution of this burden of cost of the street opening. In the exercise of such discretion, it found and determined as a fact that the attempted assessment would exceed the statutory limit of half the lot's value in this river block. The second commission, misinterpreting the mandate of the Special Term, declined to receive proofs of value offered, and, acting as calculators and computers, imposed assessments of over 60 per cent. of the value of the lands, according to the city's original testimony.

Obviously such results cannot stand. Either a commission must act upon proofs already in the record, or upon such new proofs as it may openly take upon due notice to the assessed lot owner. When a prior commission, after hearing evidence, reports that it cannot impose the full sum sought because such assessment will be more than half the lot values, such a determination cannot be lightly disregarded. A different determination, if it is to be judicial and not arbitrary, must be upon evidence taken so as to protect the interests to be assessed. An attempt to impose on the lots a greater burden than the benefits incurred, especially to assess a lot beyond half its value, is to proceed without due process of law, and leads from assessing for benefits towards confiscation. The direction to assess back the cost and expense of the street opening is subject to an express condition that the lands shall have been benefited, as the City Charter contemplates.

The order confirming the second report must therefore be reversed, with $10 costs and disbursements, and the report sent back to a new commission, with direction to proceed to assess and distribute the burdens of this street opening in proportion to the benefits sustained by the several lots within the area of assessment; and, in determining such benefits, to afford appellants and any lot owners interested an opportunity to give proof on the questions of value and of benefit, which testimony may be taken in the usual manner, with liberty to cross-examine and to give counter testimony. Furthermore, the requirement to assess the lots considered to be benefited must be subject to the rigid limitation that such assessment shall not exceed half the value of the lot as of the 1st day of March, 1907, when the title vested in the city of New York.

Order to be settled before the Presiding Justice. All concur.